UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. L.C., | No. 1:25-cv-01996-DC-JDP (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| MINGA WOFFORD, et al., | |
| Respondents. | (Doc. No. 2) |

This matter is before the court on Petitioner D.L.C.'s motion for temporary restraining order (Doc. No. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Having considered the parties' briefing (Doc. Nos. 2, 10, 11), the court will grant Petitioner's motion for a temporary restraining order.

## BACKGROUND

**A.    Factual Background**

On May 12, 2022, Petitioner D.L.C., a native and citizen of Peru, entered the United States without inspection. (Doc. Nos. 1 at ¶ 14; 1-2 at ¶ 2.) Petitioner was apprehended by United States Department of Homeland Security ("DHS") shortly after entering the country. (Doc. Nos. 1 at ¶ 25; 1-2 at ¶ 2.) Petitioner was initially placed in expedited removal proceedings, but he was

1

1  placed in removal proceedings under 8 U.S.C. § 1229a after he expressed a fear of being removed
2  to Peru due to threats and harassment by his fiancée's ex-husband. (Doc. Nos. 10 at 1; 10-2 at 2;
3  2-2 at 3.) DHS detained Petitioner for approximately one week before releasing him on parole.[1]
4  (Doc. Nos. 1 at ¶ 25; 2-6 at 3, 5–6.) Following his release, Petitioner lived in Bakersfield,
5  California, with his partner and her daughter. (Doc. No. 1 at ¶ 26.) Since his release, Petitioner
6  has complied with all terms of his Intensive Supervision Appearance Program. (Doc. Nos. 1 at
7  ¶ 27; 1-1 at ¶ 6.) Petitioner has applied for asylum and withholding of removal and intends to
8  pursue these applications for immigration relief. (Doc. No. 2 at 14.)
9        On September 12, 2025, Petitioner appeared for a credible fear interview relating to his
10 asylum claim. (Doc. Nos. 1-2 at ¶ 12; 1-4 at 2.) That same day, he was issued a Notice to Appear
11 for a removal hearing on December 10, 2025. (Doc. Nos. 1 at ¶ 30; 2-2 at 2.) The Notice to
12 Appear indicates that removal proceedings would be held "under section 240 of the Immigration
13 and Nationality Act." (Doc. No. 2-2 at 2.) Petitioner's next removal hearing is scheduled for
14 January 15, 2026. (Doc. Nos. 1 at ¶ 30; 2-3 at 2.)
15       On September 17, 2025, officers from United States Immigration and Customs
16 Enforcement ("ICE") appeared unannounced outside of Petitioner's home in Bakersfield. (Doc.
17 Nos. 1 at ¶ 28; 1-2 at ¶ 8.) The ICE officers detained Petitioner and brought him to an ICE office
18 in Bakersfield. (*Id.*) He was later transferred to the Mesa Verde Detention Facility, where he
19 remains detained. (*Id.*)
20 **B.    Procedural Background**
21       On December 23, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. No. 1.)
22 Petitioner raises the following claims against Respondents Minga Wofford, Sergio Albarran,
23 Todd M. Lyons, Kristi Noem, and Pam Bondi: (1) violation of Petitioner's due process rights

---

[1] As discussed further below, Petitioner submitted two documents from DHS purportedly authorizing his parole. The first, titled "Notice of Custody Determination" and dated May 12, 2022, states that Petitioner was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 238 of title 8, Code of Federal Regulations." (Doc. No. 2-6 at 3.) The second, titled "Interim Notice Authorizing Parole" and dated May 13, 2022, states that Petitioner was being released "pursuant to . . . section 212(d)(5)(A) of the Immigration and Nationality Act." (*Id.* at 5.)

1  under the U.S. Constitution relating to his re-detainment without the opportunity to appear before
2  a neutral adjudicator; and (2) violation of Petitioner's due process rights under the U.S.
3  Constitution relating to his continued detainment by ICE. (*Id.* at 22–24.)

4        That same day, Petitioner filed the pending motion for a temporary restraining order
5  requesting that Respondents immediately release him from detainment, enjoining Respondents
6  from re-arresting Petitioner unless and until he is afforded a hearing before a neutral adjudicator,
7  and enjoining Respondents from removing Petitioner to another country.[2] (Doc. No. 2 at 27.)

8        On December 24, 2025, the court issued a minute order setting the briefing schedule for
9  Petitioner's motion for a temporary restraining order and directing Respondents to substantively
10 address whether Petitioner's claim is distinguishable from this court's previous decisions in
11 *Labrador-Prato v. Noem*, No. 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2,
12 2025), and *Selis Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec.
13 14, 2025). (Doc. No. 6.)

14       On December 30, 2025, Respondents timely filed their opposition.[3] (Doc. No. 10.) In their
15 opposition, Respondents acknowledge that although "this Court has previously applied § 1226(a)
16 rather than § 1225(b)" in similar circumstances, including in *Labrador-Prato* and *Selis Tinoco*,
17 those cases were distinguishable because "Petitioner is subject to mandatory detention under
18 § 1225(b)(1)—not § 1225(b)(2)(A)." (*Id.* at 7.) Also on December 30, Petitioner timely filed his

---

[2] In their opposition, Respondents argue that the court should deny Petitioner's motion as untimely because "Petitioner waited more than three months to move *ex parte* for a temporary restraining order." (Doc. No. 10 at 5.) Petitioner's counsel attests that "[t]his is the first opportunity Petitioner can bring this action because there is a scarcity of qualified federal and immigration attorneys in this jurisdiction, and the demand for competent lawyers far exceeds availability." (Doc. No. 2-2 at ¶ 11.) The court finds that Petitioner's difficulty in finding counsel excuses his delay in filing the pending motion. *See Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 874 (C.D. Cal. 2025) (stating that difficulty obtaining and accessing counsel while petitioner is in immigration detention justifies delay in filing temporary restraining order).

[3] Respondents filed a request that the court take judicial notice of Petitioner's Record of Deportable/Inadmissible Alien in conjunction with their opposition. (Doc. No. 10-1.) Petitioner did not file an opposition to this request. The court will grant Respondents' request for judicial notice. *See Dent v. Holder*, 627 F.3d 365, 370–72 (9th Cir. 2010) (taking judicial notice of immigration documents in a noncitizen's "A-file" on the basis that "they are official agency records.")

reply. (Doc. No. 11.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.     Likelihood of Success on the Merits**

Petitioner argues that he is likely to succeed on the merits of his claim that his re-detention, without a hearing before a neutral adjudicator, violates his due process rights. (Doc.

4

No. 2 at 14–26.) Petitioner contends that "the Due Process Clause of the Constitution prevents Respondents from re-arresting him without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that he is now a danger or a flight risk." (*Id.* at 14.) In opposition, Respondents argue Petitioner is not entitled to a hearing before being re-detained because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). (Doc. No. 10 at 4–7.) Additionally, Respondents contend that, even if Petitioner's detention is not mandated under section 1225(b)(1), his detention while removal proceedings are pending is constitutionally permissible. (*Id.* at 8–10.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Individuals subject to mandatory detention are not without due process rights. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091–93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under § 1225(b)(1)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

Here, there is some ambiguity as to whether Petitioner was released on parole in May 2022 pursuant to 8 U.S.C. § 1182(d)(5) or 8 U.S.C. § 1226 because ICE issued separate documents to Petitioner stating that he was being released pursuant to each statute. (*See* Doc. No. 2-6 at 3 (stating that Petitioner was being released "[p]ursuant to the authority contained in

5

section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and part 238 of title 8, Code of Federal Regulations."); Doc. No. 2-6 at 5 (stating that Petitioner was being released "pursuant to . . . section 212(d)(5)(A) of the Immigration and Nationality Act [8 U.S.C. § 1182(d)(5)(A)].").

Notably, if Petitioner was detained then released under § 1226, he would be statutorily entitled to a bond hearing before a neutral adjudicator before his re-detainment. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."); *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025) ("Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings."). Thus, Respondents contend that DHS's citation of § 1226 in the first document provided to Petitioner was "erroneous," and that Petitioner was properly paroled under § 1182(d)(5)(A) in the second document. (Doc. No. 10 at 7.) Petitioner maintains that "regardless of the specific statute [permitting Petitioner's release], the core issue is constitutional, not statutory." (Doc. No. 11 at 6.) Petitioner does not otherwise opine as to which parole document controls. Accordingly, the court will assume, arguendo, that Petitioner's May 2022 parole was authorized under section 1182(d)(5)(A) rather than section 1226.

Under § 1182(d)(5)(A), noncitizens may be temporarily released on parole "for urgent humanitarian reasons or significant public benefits." 8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 300. Release under § 1182(d)(5)(A) requires a determination that the noncitizen poses neither "a security risk nor a risk of absconding." *Id.* (quoting 8 C.F.R. § 212.5(b)); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release [necessarily] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

"Once released, a parolee acquires an interest in his or her continued liberty." *Chavarria v. Chestnut*, No. 25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). The court finds the analysis in *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025) to be instructive on this point. In *Pinchi* the court held that:

6

> Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey* [*v. Brewer*], 408 U.S. [471, 482 (1972)].

*Pinchi*, 792 F. Supp. 3d at 1032. Following *Pinchi*, a substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections. *See Chavarria*, 2025 WL 3533606, at *3 (collecting cases); *Gergawi v. LaRose*, No. 25-cv-03352-JES-MMP, 2025 WL 3719321, at *3–4 (S.D. Cal. Dec. 23, 2025) (collecting cases recognizing that parole under 8 U.S.C. § 1182(d)(5)(A) entitles a noncitizen to certain due process rights under procedural due process); *Benitez v. Hermosillo*, No. 25-cv-02535-BAT, 2025 WL 3763932, at *4 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Babblejit Kaur v. Bondi*, No. 25-cv-03263-KK-MAR, Order, Doc. No. 12 at 5 (C.D. Cal. Dec. 18, 2025) (finding petitioner has a liberty interest in her continued freedom following her parole under 8 U.S.C. § 1182(d)(5)(A)).

The court agrees with the findings reached in the cases cited above and concludes that Petitioner is likely to demonstrate that he has a protected liberty interest in his continued release following his parole. Therefore, the court must determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (recognizing freedom

1   from detention is "the most elemental of liberty interests"). Petitioner was out of custody for over
2   two years prior to his re-detention. (Doc. No. 1 at ¶¶ 1, 14, 26.) During that time, Petitioner has
3   lived in Bakersfield, California, where he has been steadily employed to support his partner and
4   her daughter, whom he treats as his own. (*Id*. at ¶¶ 14, 26.) Petitioner's continued liberty interest
5   in remaining on release is undermined by his detention. *Doe*, 787 F. Supp. 3d at 1094; *Cf. Marina
6   V.N. v. Robbins*, No. 25-cv-01845-KES-SKO, 2025 WL 3701960, at *4 (E.D. Cal. Dec. 21, 2025)
7   ("Petitioner had been released on her own recognizance for nearly three years prior to her recent
8   detention, and during that time, she worked, became engaged, and attended school. Her re-
9   detention denies her that freedom."). Thus, this factor favors a finding that Petitioner's private
10  interest has been affected by his detention.

11        The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in
12  Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5
13  (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the
14  petitioner] has not received any bond or custody redetermination hearing."). Civil immigration
15  detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a
16  danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. &
17  Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

18        Petitioner has been detained for over three months without being provided a bond hearing
19  to evaluate his dangerousness and/or flight risk. (Doc. No. 1 at ¶ 2.) Neither party alleges that
20  Petitioner has violated any term of his parole. Under these circumstances, a pre-deprivation
21  hearing before a neutral decisionmaker would have significant value in determining whether
22  Petitioner's detention is necessary. Thus, the second *Mathews* factor favors Petitioner.

23        Turning to the third *Mathews* factor, the court acknowledges the government has an
24  interest in the steady enforcement of its immigration laws but recognizes that the government's
25  interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega
26  v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 787 F. Supp. 3d at 1094. Custody
27  hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*,
28  787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the

power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the merits that due process requires a bond hearing prior to his re-detention. Therefore, the court finds that Petitioner has established a likelihood of success on the merits of his procedural due process claim.

**B.    Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.    Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-05785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the

9

1  Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of
2  his procedural due process rights and is suffering irreparable harm as a result.
3        On the other hand, the burden on Respondents in releasing Petitioner from detention is
4  minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining
5  Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is
6  necessary to prevent flight or danger to the community." *Valencia Zapata v. Kaiser*, No. 25-cv-
7  07492-RFL, 2025 WL 2741654, at *13 (N.D. Cal. Sep. 26, 2025) (quoting *Salcedo Aceros v.*
8  *Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (N.D. Cal. Sep. 12, 2025)).
9  Respondents cannot reasonably assert that the public and government will be harmed in any
10 legally cognizable sense by being enjoined from violating Petitioner's due process rights, which
11 is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)
12 (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by
13 being enjoined from constitutional violations."). Accordingly, the court finds that the balance of
14 equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter*
15 factors weigh in favor of Petitioner.
16       Having found that Petitioner is likely to succeed on the merits of his procedural due
17 process claim, the court finds that immediate release is warranted to return to the status quo ante
18 and remedy a constitutional violation. *See Yuhua Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC,
19 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (noting the status quo ante is "the last
20 uncontested status which preceded the pending controversy") (citation omitted).

21 **D.    Bond**

22       "Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive
23 relief 'only if the movant gives security in an amount that the court considers proper to pay the
24 costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'"
25 *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).
26 "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion
27 as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906,
28 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond

1  when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or
2  her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).
3        The parties do not address in their briefing whether security is warranted in this case. The
4  court finds that no security is required here. Courts regularly waive security in cases like this one.
5  *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-
6  SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-
7  RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above,

1. Respondents request for judicial notice (Doc. No. 10-1) is GRANTED;
2. Petitioner D.L.C.'s motion for temporary restraining order (Doc. No. 2) is GRANTED;
3. Petitioner D.L.C. shall be released immediately from the Respondents' custody with the same conditions he was subject to immediately prior to his detention on September 17, 2025. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;
4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered; and

/////
/////
/////
/////
/////
/////
/////
/////

11

5. Respondents are ORDERED TO SHOW CAUSE by no later than January 9, 2026, as to why this court should not issue a Preliminary Injunction on the same terms as this Order. Petitioner may file a response thereto by no later than January 12, 2026. Respondents may file a reply to Petitioner's response by no later than January 13, 2026. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated: __**January 5, 2026**__   _____
Dena Coggins
United States District Judge