UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.L.C.,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, et al.,<br><br>Respondents. | No. 1:25-cv-01996-DC-JDP (HC)<br><br>ORDER GRANTING TEMPORARY <u>RESTRAINING ORDER AND</u> <u>PRELIMINARY INJUNCTION</u><br><br>(Doc. Nos. 2, 12) |

This matter is before the court on Respondents' response to the court's order to show cause as to why the court should not issue a preliminary injunction on the same terms as the temporary restraining order issued on January 5, 2026. (Doc. No. 12.) For the reasons explained below, the court will issue a preliminary injunction on the same terms as the January 5, 2026 temporary restraining order.

**A.     Factual Background**

On May 12, 2022, Petitioner D.L.C., a native and citizen of Peru, entered the United States without inspection. (Doc. Nos. 1 at ¶ 14; 1-2 at ¶ 2.) Petitioner was apprehended by United States Department of Homeland Security ("DHS") shortly after entering the country. (Doc. Nos. 1 at ¶ 25; 1-2 at ¶ 2.) Petitioner was initially placed in expedited removal proceedings, but he was placed in removal proceedings under 8 U.S.C. § 1229a after he expressed a fear of being removed to Peru due to threats and harassment by his fiancée's ex-husband. (Doc. Nos. 10 at 1; 10-2 at 2;

1

1    2-2 at 3.) DHS detained Petitioner for approximately one week before releasing him on parole.[1]

2    (Doc. Nos. 1 at ¶ 25; 2-6 at 3, 5–6.) Following his release, Petitioner lived in Bakersfield,

3    California, with his partner and her daughter. (Doc. No. 1 at ¶ 26.) Since his release, Petitioner

4    has complied with all terms of his Intensive Supervision Appearance Program. (Doc. Nos. 1 at

5    ¶ 27; 1-1 at ¶ 6.) Petitioner has applied for asylum and withholding of removal and intends to

6    pursue these applications for immigration relief. (Doc. No. 2 at 14.)

7            On September 12, 2025, Petitioner appeared for a credible fear interview relating to his

8    asylum claim. (Doc. Nos. 1-2 at ¶ 12; 1-4 at 2.) That same day, he was issued a Notice to Appear

9    for a removal hearing on December 10, 2025. (Doc. Nos. 1 at ¶ 30; 2-2 at 2.) The Notice to

10   Appear indicates that removal proceedings would be held "under section 240 of the Immigration

11   and Nationality Act." (Doc. No. 2-2 at 2.) Petitioner's next removal hearing was scheduled for

12   January 15, 2026. (Doc. Nos. 1 at ¶ 30; 2-3 at 2.)

13           On September 17, 2025, officers from United States Immigration and Customs

14   Enforcement ("ICE") appeared unannounced outside of Petitioner's home in Bakersfield. (Doc.

15   Nos. 1 at ¶ 28; 1-2 at ¶ 8.) The ICE officers detained Petitioner and brought him to an ICE office

16   in Bakersfield. (*Id.*) He was later transferred to the Mesa Verde Detention Facility, where he

17   remains detained. (*Id.*)

18   **B.     Procedural Background**

19           On December 23, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. No. 1.)

20   Petitioner raises the following claims against Respondents Minga Wofford, Sergio Albarran,

21   Todd M. Lyons, Kristi Noem, and Pam Bondi: (1) violation of Petitioner's due process rights

22   under the U.S. Constitution relating to his re-detainment without the opportunity to appear before

23   a neutral adjudicator; and (2) violation of Petitioner's due process rights under the U.S.

---

[1] As discussed further below, Petitioner submitted two documents from DHS purportedly authorizing his parole. The first, titled "Notice of Custody Determination" and dated May 12, 2022, states that Petitioner was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 238 of title 8, Code of Federal Regulations." (Doc. No. 2-6 at 3.) The second, titled "Interim Notice Authorizing Parole" and dated May 13, 2022, states that Petitioner was being released "pursuant to . . . section 212(d)(5)(A) of the Immigration and Nationality Act." (*Id.* at 5.)

2

1  Constitution relating to his continued detainment by ICE. (*Id.* at 22–24.)

2  That same day, Petitioner filed a motion for a temporary restraining order requiring that Respondents immediately release him from detainment, enjoining Respondents from re-arresting Petitioner unless and until he is afforded a hearing before a neutral adjudicator, and enjoining Respondents from removing Petitioner to another country. (Doc. No. 2 at 27.)

On January 5, 2026, the court granted Petitioner's motion for temporary restraining order, holding that "Petitioner is likely to demonstrate that he has a protected liberty interest in his continued release following his parole" and ordering Petitioner's immediate release from Respondents' custody on the same conditions he was subject to immediately prior to his detention on September 17, 2025. (Doc. No. 12 at 7, 11.) The court also ordered that Respondents show cause "as to why this court should not issue a Preliminary Injunction on the same terms" as the January 5, 2026 order. (*Id.* at 12.)

On January 9, 2026, Respondents timely filed their response to the court's order to show cause asserting that the temporary restraining order "contains several material errors of law and fact," requesting that the preliminary injunction not issue, and requesting that the temporary restraining order be vacated. (Doc. No. 13 at 2, 4.)

On January 12, 2026, Petitioner timely filed a reply to Respondents' response requesting that the court issue a preliminary injunction on the same terms as the temporary restraining order. (Doc. No. 14.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction

is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

In the court's order granting Petitioner's motion for a temporary restraining order, the court found that "Petitioner is likely to demonstrate that he has a protected liberty interest in his continued release following his parole," therefore his "immediate release is warranted to return to the status quo ante and remedy [the] constitutional violation." (Doc. No. 12 at 7, 10.)

Respondents assert a preliminary injunction should not issue because (1) Petitioner does not have a liberty interest in his continued release because his parole under 8 U.S.C. § 1182(d)(5)(A) had expired at the time of his re-detainment; and (2) pursuant to *Demore v. Kim*, 538 U.S. 510 (2003), Petitioner is not entitled to an individualized determination as to flight risk and dangerousness unless his continued detention becomes indefinite and potentially permanent.[2] (Doc. No. 4 at 2–3.) The court will address each argument in turn.

---

[2] Respondents also argue that Petitioner's motion is not timely (Doc. No. 13 at 2), but that argument was already considered and rejected by the court in the temporary restraining order. (*See* Doc. No. 12 at 3 n.2.)

4

### A. Expiration of Petitioner's Parole

Respondents contend that, because Petitioner was initially released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A), and because his parole under that section was time-limited from May 2022 to May 2023 (Doc. No. 2-6 at 4), there is no "implicit promise upon which [Petitioner] may rely, that [his] liberty will be revoked only if [he] fail[s] to live up to the conditions of release." (Doc. No. 13 at 1–2) (quoting *Pinchi v.* Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)). Respondents further contend Petitioner did not have a liberty interest in his continued release because Petitioner's parole was not indefinite under § 1182. (*Id.*) However, neither of Respondents' contentions are persuasive or warrant the court reconsidering the analysis set forth in the temporary restraining order.

*First*, as addressed in the temporary restraining order, it is unclear whether Petitioner was released on parole in May 2022 pursuant to 8 U.S.C. § 1182(d)(5) or 8 U.S.C. § 1226 because ICE issued separate documents to Petitioner stating that he was being released pursuant to each statute. (Doc. No. 12 at 5–6.) The first document Respondents issued Petitioner authorizes his release pursuant to § 1226, under which Petitioner would be statutorily entitled to "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change" before he could be re-detained. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Respondents, however, contend this first document is "erroneous," while the second document, which was issued the following day and indicates Petitioner was released under § 1182(d)(5)(A), provides the correct basis for Petitioner's release. (Doc. No. 10 at 9.) But Respondents do not provide any competent evidence to support this assertion. Even if the first document was issued in error, Respondents do not provide any authority to support the proposition that the government can unilaterally alter a person's statutory and constitutional rights without explanation merely by asserting a determination made years earlier was "erroneous." Parole under § 1226 does not have an automatic expiration date, and the document providing Petitioner's release under that section does not include any such expiration. (Doc. No. 2-6 at 3.) Thus, Petitioner has demonstrated a likelihood of success on the merits of his claim that he was

1  released on parole under § 1226, and that he is both statutorily and constitutionally entitled to a
2  pre-deprivation bond hearing before his re-detainment.

3      *Second*, while Petitioner correctly notes that Petitioner's parole release under § 1182
4  expired in May 2023, numerous courts in the Ninth Circuit have found that when a noncitizen is
5  paroled under that section, his "liberty interest [does] not expire along with his parole." *Omer*
6  *G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22,
7  2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once
8  established, Petitioner's interest in liberty is a constitutional right which may only be revoked
9  through methods that comport with due process, such as a hearing in front of a neutral party to
10 determine whether Petitioner's re-detainment is warranted. . . . That the express terms of the
11 [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow
12 obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-
13 detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D.
14 Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained
15 following expiration of his § 1182 parole); *Quiroga-Chaparro v. Warden of the Golden State*
16 *Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 WL 3771473, at *4–5 (E.D. Cal. Dec. 31,
17 2025) (same). Indeed, the applicable regulations state that if a non-citizen is re-detained after
18 § 1182 parole expires, they "shall again be released on parole" if their "exclusion, deportation, or
19 removal order cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(1), (e)(2)(i).

20     Here, Petitioner is not subject to a removal order. Petitioner was detained *before* he was
21 scheduled to appear at his initial removal proceeding. (Doc. No. 2-4.) Petitioner has now been
22 detained for four months, yet Respondents provide neither an indication that his removal will be
23 executed within a reasonable time, nor an alternative for how Petitioner may challenge his
24 continued detention while removal proceedings are pending other than through the pending
25 habeas petition. The requirement that a noncitizen "shall again be released on parole" is illusory if
26 the noncitizen is entitled to neither a bond hearing in front of a neutral adjudicator, nor the ability
27 to pursue habeas relief in court.

28     Further, while the document authorizing Petitioner's parole under § 1182 does indicate

1   that his parole is valid for only one year, it also states that his parole may be extended at ICE's
2   discretion, and that Petitioner was to be "released from service custody pending a final decision in
3   [his] exclusion/deportation hearing." (Doc. No. 2-6 at 5–6.) In the four years since his initial
4   release, Petitioner has established a life in the United States with his fiancée and her daughter, for
5   whom he is the primary financial provider. (Doc. No. 2-2 at ¶ 6.) He has enrolled in adult school
6   to study English and has otherwise built strong community ties in Bakersfield, California. (*Id.* at
7   7.) Petitioner undoubtedly has a strong liberty interest in his continued freedom.

8       Moreover, Respondents have given Petitioner every "implicit promise" of his continued
9   liberty in the three years between the expiration of Petitioner's § 1182 parole and his re-
10  detainment. Respondents issued Petitioner an employment authorization document in late 2024,
11  *after* the nominal termination of his parole. (Doc. No. 2-2 at ¶ 7.) During the post-expiration
12  period, Petitioner continued to abide by the terms of his parole, including by appearing for his
13  credible fear interview a week before his detention. (Doc. No. 2-2 at ¶¶ 4, 12.) Respondents do
14  not indicate why Petitioner was not detained at that interview, or at any of his other scheduled
15  ICE check-ins following the expiration of his parole. Thus, Respondents did implicitly promise
16  Petitioner's continued release, and Petitioner reasonably relied on that implicit promise in
17  growing his life in the United States. See *Omer*, 2025 WL 3254999, at *6 ("Under the
18  circumstances of this case, where immigration officials provided to petitioner a document stating
19  that he was released 'pending a final decision' in his removal proceedings, petitioner had not even
20  had his initial hearing in those removal proceedings, and petitioner was granted a five-year work
21  authorization permit during his year on parole status, petitioner reasonably maintained a liberty
22  interest in his release pending a final removal decision in his immigration case."); *Rodriguez*
23  *Cabrera v. Mattos*, No. 25-cv-01551-RFB-EJY, --- F. Supp. 3d ---, 2025 WL 3072687, at *11 (D.
24  Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest in freedom from physical confinement,
25  and that liberty interest is particularly strong given his initial release from detention [pursuant to §
26  1182] in 2022, and the fact that Respondents did not seek his return to custody upon the
27  expiration of his parole in December 2022, or in the three years since.")

28      Accordingly, as the court found in granting Petitioner's motion for a temporary restraining

7

order, whether Petitioner was initially released pursuant to § 1226 or § 1182, Petitioner is likely to succeed on the merits of his claim that his re-detainment without a bond hearing violated his constitutional right to due process.

**B.     Detention Under *Demore***

Respondents contend the "Due Process Clause does not require individualized determinations of dangerousness or flight risk to detain a noncitizen as his or her removal proceedings move forward," therefore Petitioner is not entitled to a bond hearing. (Doc. No. 13 at 3) (citing *Demore*, 538 U.S. at 510, 514, 531). But in *Demore*, the petitioner did not dispute that he had been convicted of multiple crimes, or that he was subject to "mandatory detention under § 1226(c)," which applies to "a limited class of deportable aliens—including those convicted of an aggravated felony." (*Id.* at 513–514, 518.) Thus, the Court concluded the "INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited purpose of his removal proceedings," was constitutionally permissible. (*Id.* at 1722.)

Here, unlike in *Demore*, Petitioner has been neither arrested nor convicted of a crime (Doc. No. 2-1 at ¶ 7.) Rather, Petitioner is actively pursuing his asylum claim to prevent his removal and does not concede that he is subject to mandatory detention. (Doc. No. 2-3.) Further, whereas DHS had not made a determination as to the flight risk or danger to the community of the petitioner in *Demore*, here, DHS has already found that Petitioner is neither a flight risk nor a danger to the community. *See* 8 C.F.R. § 212.5(b) (stating that immigrants may only be paroled under § 1182 "provided the aliens present neither a security risk nor a risk of absconding"); *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (stating that at an initial bond determination hearing, noncitizens detained under § 1226(a) bear "the burden to establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight"). Thus, Respondents' reliance on *Demore* is unavailing, and Petitioner is entitled to a bond hearing before he may be re-detained.

/////

/////

|   |   |
|---|---|
| 1 | **CONCLUSION** |

For the reasons explained above, and in the court's order granting Petitioner's motion for a temporary restraining order (Doc. No. 12):

1. The court hereby ISSUES a preliminary injunction on the same terms as the temporary restraining order (Doc. No. 12); and
2. The court REFERS this matter to the assigned Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated: __**January 20, 2026**__

Dena Coggins
United States District Judge

9